FILED
U.S. BANKRUPTCY COURT
EST & WST DISTS. OF ARK.

NOV 2 6 2007

JEAN ROLFS, CLERK
By:_____
DEP. CLERK

# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

07-6024EA

| | |
|---|---|
| In re: Bobby Ernest Finch and Donna Lynn Finch, | |
| Debtors | |
| Bobby Ernest Finch and Donna Lynn Finch, | Appeal from the United States Bankruptcy Court for the Eastern District of Arkansas |
| Debtors-Appellants | |
| v. | |
| David D. Coop, | |
| Trustee-Appellee | |

Submitted: October 30, 2007
Filed: November 26, 2007

SCHERMER, FEDERMAN and MAHONEY, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

    Debtors Bobby Ernest Finch and Donna Lynn Finch appeal from the Order of the Bankruptcy Court[1] denying their Motion to Reopen their Chapter 13 Case and

---

[1] The Honorable Richard D. Taylor, Bankruptcy Judge, United States Bankruptcy Court for the Eastern District of Missouri.

denying their Applications to Proceed without Prepayment of Fees. For the reasons that follow, the Order is AFFIRMED.

## FACTUAL BACKGROUND

The Debtors filed their Chapter 13 bankruptcy case on September 9, 2004, and filed their schedules and plan on October 6, 2004. Among their secured creditors, the Debtors listed First Security Bank ("First Security"), who had a security interest in the Debtors' 1999 Toyota Tacoma pickup truck, and First State Bank ("First State"), who had a security interest in the Debtors' 1994 Dodge one-ton pickup truck. On September 21, 2004, First Security filed a motion for relief from stay regarding the Toyota Tacoma pickup. In addition, both First Security and First State objected to the Debtors' proposed plan. First Security's motion for relief from stay and objection to confirmation were dismissed based on a stipulation with the Debtors as to the plan's treatment of its claim, and First State's objection to confirmation was sustained. Ultimately, after at least two amendments, the Debtors' plan was confirmed on February 23, 2005.

In July 2005, First State and the Chapter 13 Trustee each moved to dismiss the case due to default in plan payments. The Chapter 13 Trustee later withdrew his motion to dismiss. As to First State's motion to dismiss, on November 15, 2005, the court entered an Order, based on agreement between the parties, placing the Debtors on "strict compliance" such that they were required to make full and timely plan payments for the following twelve months (the "Strict Compliance Order"). In the event that the Debtors failed to timely make such a payment, First State had the right, upon *ex parte* motion, to an order granting it relief from the stay to allow it to pursue its security interest in the Debtors' Dodge pickup.

The Debtors did not make the November or December 2005 plan payments. On December 16, 2005, First Security filed a motion to dismiss due to default in plan

2

payments. In addition, on December 22, 2005, First State filed an *ex parte* motion for relief from the stay, alleging that the Debtors had not timely made the payments required under the Strict Compliance Order. The court entered the *ex parte* Order granting First State relief from the stay on December 27, 2005.

Meanwhile, in the midst of this period of time when they were in default on their plan payments, the Debtors filed a motion, on October 11, 2005, asking that they be permitted to release their attorney from representing them in the case. The attorney responded, essentially stating that he had no objection to the Debtors' request that he withdraw from the case. On December 28, 2005, the day after State Bank's *ex parte* Order for relief from the stay was entered, the court granted the Debtors' request to release their attorney. From that point forward, the Debtors represented themselves *pro se*.

On January 11, 2006, First Security again moved to dismiss, due to default under the Strict Compliance Order. On January 12, 2005, the Debtors filed a motion requesting that the *ex parte* Order granting relief to First State be set aside. The court did not rule on the motion to set aside because, on March 14, 2006, it dismissed the case for failure to make timely payments under the Strict Compliance Order. On April 5, 2006, the Chapter 13 Trustee filed a Final Report and Account, and the court entered an order discharging the Trustee. The court clerk closed the case on April 17.

However, prior to the closing of the case, on April 4, 2006, the Debtors had filed a Notice of Appeal of the March 14 Order dismissing their case, as well as the December 28, 2005 Order allowing the attorney to withdraw. Accordingly, since an appeal was pending in the case, the bankruptcy court entered an Order on May 11, 2006, stating that the case had been closed in error, and reopening the case. We then dismissed the Debtors' appeal of the two Orders as untimely. Similarly, on August 31, 2006, the Court of Appeals for the Eighth Circuit dismissed the appeal for lack of jurisdiction.

Meanwhile, on August 30, 2006, the Debtors moved to reinstate their bankruptcy case. The Chapter 13 Trustee opposed the motion, pointing out that the Debtors had missed numerous payments while the case was pending, and that the delinquency was compounded by the additional payments not made during the period after the case was dismissed. On October 27, 2006, the Court entered an Order denying the motion to reinstate the case. On November 6, 2006, the Chapter 13 Trustee again submitted a Final Report and Account, and the court entered an Order discharging the Trustee from the case. The case was then closed on March 21, 2007. By this time, it appears that both the Dodge and the Toyota pickup trucks had been repossessed.

On April 9, 2007, the Debtors again filed a motion to reopen their case, along with applications for each of them to proceed without prepayment of fees. The Chapter 13 Trustee again opposed the motion to reopen. The Trustee again pointed out that, although the Debtors could perhaps file a new Chapter 13 or Chapter 7 case, this case should not be reopened or reinstated because the Debtors would not be able to overcome the substantial and continually increasing delinquency in plan payments. Following a hearing, the Court denied the Debtors' motions and applications by Order entered April 30, 2007. The Debtors timely appealed the April 30 Order.

## STANDARD OF REVIEW

The BAP reviews findings of fact for clear error, and legal conclusions *de novo*.[2] A bankruptcy court's decision to reopen a case is within the court's discretion, based on the particular circumstances and equities of the particular case.[3]

---

[2] *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan)*, 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[3] *In re Apex Oil Co., Inc.*, 406 F.3d 538, 542 (8th Cir. 2005).

4

## DISCUSSION

The Debtors raise numerous grievances concerning the events in their case. The crux of the Debtors' complaint, however, is that, due to no fault of their own, they were unable to make the plan payments and, since they promptly notified the Trustee and creditors that they could not make the payments, the stay should not have been lifted and their case should not have been dismissed. Specifically, at the time the Debtors filed their bankruptcy case, their sole source of income was through acquiring used or damaged pallets and then repairing and reselling them. This required the use of a pickup truck. However, the trucks were inoperable or otherwise unusable for significant periods of time for various reasons and, as mentioned above, they were ultimately repossessed. Thus, through no fault of their own, they contend, they were prevented from earning a living and making their plan payments.

Further, at around the time the Strict Compliance Order was entered in the fall of 2005, the Debtors were seeking to discharge their attorney. Unable to make the plan payments, and without the assistance of counsel, the Debtors consulted a booklet given to them by the Chapter 13 Trustee's Office at the outset of their case. According to the Debtors, the booklet said that if they were unable to timely make a payment without causing a hardship on themselves, they should contact the Chapter 13 Trustee to explain the situation. Believing this would relieve them of any duty to make their plan payments, even under the Strict Compliance Order, they contacted the Chapter 13 Trustee to explain the situation. They assert that, since they notified the Trustee about the situation, the trucks were wrongfully repossessed and their case was improperly dismissed and closed. Hence, they ask that their case be reopened so that they can regain possession of the trucks and obtain their discharge.

Section 350 of the Bankruptcy Code governs the closing and reopening of bankruptcy cases. That section provides:

5

> (a) After an estate is fully administered and the court has discharged the trustee, the court shall close the case.
>
> (b) A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.[4]

In essence, the Debtors assert that the case should be reopened to accord them relief (*i.e.*, allowing them to proceed with their Chapter 13 case, regain possession of the trucks, and obtain their discharge) and for other cause (*i.e.*, to remedy the alleged wrongs done to them by their creditors and award them damages for such wrongs).

The Debtors misunderstand the nature and effect of reopening a closed case.

> Reopening is supposed to be little more than an administrative function which is designed to resurrect closed files from the court's archives so that some type of request for relief can be received and acted upon. This is usually done in order to take care of some detail that was overlooked or left unfinished at the time the case was closed. It was not designed as an opportunity to create, and then enforce, rights that did not exist at the time the case was originally closed.[5]

Rather than wanting to take care of some overlooked or unfinished detail, what the Debtors really seek is to have the dismissal of their case set aside and their trucks returned to them.

However, a dismissed case cannot be reopened under § 350(b); rather a dismissal can be undone only through an appeal or a motion under Federal Rule of Bankruptcy Procedure 9023 or 9024.[6] As mentioned above, the Order granting First

---

[4] 11 U.S.C. § 350.

[5] *In re Bartlett*, 326 B.R. 436, 438 (Bankr. N.D. Ind. 2005).

[6] 3 *Collier on Bankruptcy* ¶ 350.03, at 350-6 (15th ed. rev. 2004) (citing *Income Property Builders, Inc.*, 699 F.2d 963 (9th Cir. 1982); additional citations omitted); *see*

State relief from the stay was entered on December 27, 2005, and the Order dismissing their case was entered on March 14, 2006. The Debtors did not timely seek amendment of the Orders granting relief from the stay and dismissal under Rule 9023, nor did they timely appeal such Orders, because those acts must occur within ten days after entry of the Order.[7]

Arguably, the Debtors' Motion to Reopen the case could be viewed as a Rule 60(b) request for relief from the Orders granting relief from the stay and dismissing the case, as that rule is made applicable to this bankruptcy case by Rule 9024. That rule provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.[8]

---

*also In re Ragland*, 2006 WL 1997416 at *4-5 (Bankr. E.D. Pa. May 25, 2006) (slip copy).

[7] Fed. R. Bankr. P. 9023(e) and 8002(a).

[8] Fed. R. Civ. P. 60(b), made applicable in bankruptcy cases by Fed. R. Bankr. P. 9024.

At the outset, we question whether the motion was timely under this provision. If the Debtors assert any of the grounds for relief under Rule 60(b)(1), (2), or (3), then the motion is untimely because it was brought more than one year after the Orders were entered. Assuming that the Debtors are seeking relief under Rule 60(b)(6) for "any other reason justifying relief from the operation of the [orders]," then such motion must have been brought within a "reasonable time." "What constitutes a reasonable time is dependent on the particular facts of the case in question and is reviewed for abuse of discretion."[9]

As to the December 27, 2005 Order granting First State relief from the stay, First State has undoubtedly taken actions in reliance on the Order in the nearly two years since it was entered. Accordingly, the motion for relief from that Order was not brought within a reasonable time. As to the March 14, 2006 Order dismissing the case, we will assume for the sake of argument that the motion for relief from that Order was timely.

However, the standard of review for a denial of a Rule 60(b) motion is whether the bankruptcy court abused its discretion,[10] and "[r]elief under Rule 60(b)(6) will only be granted in extraordinary cases."[11] We agree with the bankruptcy court that allowing the Debtors to proceed in this case would be futile. The Debtors are significantly delinquent in their plan payments. Contrary to the Debtors' stated belief, simply being unable to make plan payments does not excuse them of the obligation to do so. As the bankruptcy court pointed out at the hearing, the Debtors sought to proceed *in forma pauperis* in moving to reopen their case because they did not have sufficient funds to pay the necessary filing fees. They stated at the hearing that their sole source of income at this point is collecting cans along the highway from which

---

[9] *In re Alexander*, 270 B.R. 281, 289 (B.A.P. 8th Cir. 2001).

[10] *Id.* at 286.

[11] *In re Woodcock*, 326 B.R. 441, 448 (B.A.P. 8th Cir. 2005).

they might earn $120 per week. The bankruptcy court did not abuse its discretion in denying the relief, and reinstating the case, because the Debtors are unable to cure the delinquency or make future plan payments.

Accordingly, the bankruptcy court did not err in refusing to reopen or reinstate the Debtors' bankruptcy case. The bankruptcy court's Order denying their Motion to Reopen and denying their Applications to Proceed without Prepayment of Fees is, therefore, AFFIRMED.

———————